Coe, Nowalsky & Lambert, and George Smill, New Orleans, La., for libellant.

M. Hepburn Many, Asst. U. S. Atty., and Andrew R. Martinez, New Orleans, La., for respondent.

## SHOCKLEY v. UNITED STATES.
### No. 2171.

United States District Court
E. D. Louisiana, New Orleans Division.

Feb. 5, 1954.

CHRISTENBERRY, Chief Judge.

The above entitled cause having come on for hearing on the pleadings and proofs of the respective parties, and having been argued by respective counsel, the Court being fully informed in the premises, after due deliberation makes the following findings of fact and conclusions of law:

### Findings of Fact

#### I.

Libellant reported on board the SS T. E. Mitchell at Houston, Texas, on the afternoon of June 20, 1951, to serve in the capacity of Second Assistant Engineer on a foreign voyage commencing from that port.

#### II.

Libellant underwent a pre-sign on physical examination on June 20, 1951, at Houston, Texas, and was passed physically fit for sea duty.

#### III.

Libellant signed articles in the office of the United States Commissioner at Houston, Texas, on the afternoon of June 22, 1951.

## IV.

The SS T. E. Mitchell at the time in question was a vessel owned and operated by the United States of America and Lykes Bros. Steamship Co. Inc., was general agent for the vessel.

## V.

Libellant, upon coming aboard the vessel on the afternoon of June 20, 1951, was assigned quarters aboard the vessel, which were occupied by him.

## VI.

Libellant reported to work in the engine room at 8:00 A.M., on June 21, 1951, at which time he, the First Assistant Engineer, the Third Assistant Engineer, the Junior Third Assistant Engineer, an oiler and a wiper were assigned to the duty of removing the superheater door on top of the port boiler for the purpose of renewing the gasket.

## VII.

Libellant and the other men participated in this work at intervals for a period of an hour and one-half to an hour and forty-five minutes.

## VIII.

The port boiler had been cut out, the water dumped and proper preparations made before the work was commenced.

## IX.

Libellant, after participating in the work for the period above set forth, left the vessel to go ashore to attend to personal business. The work that was performed was necessary for the ship's proper and safe operation and was part of the usual duties of libellant as an engineer, as well as that of the other men who participated in the work. Conditions were proper, safe and normal in every particular.

## X.

Libellant next reported to duty in the engine room at 8 A.M. on June 22, 1951, when he and fellow engineers and unlicensed men completed the work by installing the new gasket and replacing the superheater door.

## XI.

During the entire period that the work was commenced and completed there were no fires under the port boiler.

## XII.

The work was completed without ill effect and without any complaint by libellant or the other men who had participated therein. The boiled was refilled and fires lit on the port boiler about 10:30 A.M. on June 22, 1951; the port boiler was cut in at about 3:30 P.M. on June 22, 1951.

## XIII.

At noon on June 22, 1951, sea watches were set and libellant as Second Assistant Engineer was assigned to the four-eight watch. He reported on watch at 4 P.M. on June 22, 1951.

## XIV.

The vessel sailed from Houston, Texas, on a foreign voyage at 7:06 P.M. June 22, 1951, while libellant was on watch. At the conclusion of the watch he made entries required of him and signed the rough engine room log for the watch.

## XV.

Libellant again stood his watch from 4 A.M. to 8 A.M. on June 23, 1951, performing the duties required of him, and again signed the entries in the rough engine room log at the termination of the watch, without ill effect and in apparent good physical condition.

## XVI.

He resumed his watch at 4 P.M. June 23, 1951. At 6:30 P.M., while on watch, he was taken violently ill. The vessel at the time was in the Gulf of Mexico proceeding on its foreign voyage. The nature of his illness could not be determined and the Master sought medical advice by radio to the U. S. Coast Guard at New Orleans, and followed out the instructions received.

## XVII.

The course of the vessel was altered to Southwest Pass at the mouth of the Mississippi River below New Orleans, La., so that libellant could be hospitalized at the Marine Hospital, arriving there on the morning of June 24, 1951; Shockley being removed from the vessel at 8:40 A.M. on June 24th to a United States Coast Guard boat which met the vessel and immediately thereafter was taken to the Marine Hospital at New Orleans by ambulance for hospitalization.

## XVIII.

His condition was diagnosed by the hospital as subarachnoid hemorrhage and hepatomegaly. Libellant received extensive medical treatment as an in-patient for about six weeks, at which time he was then transferred to out-patient status, and as of January 9, 1953, he was discharged with certain permanent residual disabilities preventing him from returning to sea, but permitting him to do light duties ashore. These residuals were the result of libellant's illness.

## XIX.

Libellant has failed to establish that his illness and present condition were caused by heat stroke. The preponderance of the medical evidence definitely establishes that libellant's illness was due to natural causes in no way related to or precipitated by his service or working conditions aboard the SS T. E. Mitchell, or through any fault or negligence of the respondent, or unseaworthiness of the SS T. E. Mitchell. At the time in question, the prevailing working conditions were in every respect normal and proper.

## XX.

The SS T. E. Mitchell fully discharged its obligation in furnishing adequate and proper medical attention to libellant when he was taken ill in altering its course and proceeding to Southwest Pass for the purpose of transferring libellant to the U. S. Coast Guard for hospitalization at the Marine Hospital in New Orleans.

### Conclusions of Law

#### I.

This Court has jurisdiction over the subject matter and in Admiralty.

#### II.

Libellant's illness was in no way caused or contributed to by any fault or negligence of respondent, or the unseaworthiness of the SS T. E. Mitchell.

#### III.

Respondent is in no way responsible for the illness contracted by libellant or for the residuals resulting therefrom.

#### IV.

Respondent is entitled to a decree against libellant dismissing the claim for indemnity, with costs.

Judgment may be entered accordingly.